UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

David Cameron,

       Plaintiff,

       v.                       Civil Action No. 5:16-cv-71-gwc-jmc

Lisa Menard, Commissioner,
Vermont Department of Corrections, and
Mark Potanas, Superintendent,
Southern State Correctional Facility,

       Defendants.

## REPORT AND RECOMMENDATION
(Doc. 9)

David Cameron, proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 for money damages against Defendants Lisa Menard, Commissioner of the Vermont Department of Corrections (DOC), and Mark Potanas, Superintendent at the Southern State Correctional Facility (SSCF). (Doc. 4.) Cameron alleges that she is a transgender individual who has been subjected to harassment and unequal treatment due to her gender identity (*id.* at 3), claiming what appear to be violations of her rights under the Eighth Amendment and Fourteenth Amendment's Equal Protection Clause. In addition to money damages, she seeks "good time credit" that is owed to her retroactively and will be owed in the future, and "any other [r]elief that this Court de[e]ms [f]air and [r]easonable including cost[s], expenses, and attorney fees." (*Id.*)

Pending before the Court is Defendants' Motion to Dismiss, which Defendants filed on May 12, 2016.  (Doc. 9.)  Cameron has not responded to Defendants' Motion. For the reasons set forth below, I recommend that the Court GRANT Defendants' Motion to Dismiss.

## Background

For purposes of deciding Defendants' Motion to Dismiss, the Court accepts as true the factual allegations contained in the Complaint, and views those facts "'in the light most favorable'" to Cameron.  *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (quoting *Chase Grp. Alliance LLC v. City of N.Y. Dep't of Fin.*, 620 F.3d 146, 148 (2d Cir. 2010)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Cameron is a prisoner confined at SSCF in Springfield, Vermont.  (Doc. 4 at 2.) She is a transgender individual who identifies as female.  (*Id.* at 3.)  Defendants have permitted inmates to harass Cameron, including an incident when an inmate "[r]ipp[ed] open the s[h]ower curtain while [Cameron] was s[h]owering."  (*Id.*)  There were no consequences for that action or any of the harassment.  (*Id.*)  Now, Cameron is required to shower when other inmates "are locked in their cells."  (*Id.*)

The Complaint also alleges that Cameron is "work camp eligible," but Defendants have not permitted Cameron "to participate in work camp" because she identifies as a female.  (*Id.* at 4.)  She has consequently not received the "credit" she is due.  (*Id.*)

**Discussion**

### I.     Rule 12(b)(6)

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678); *see also* Fed. R. Civ. P. 8(a)(2). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Although plausibility is not a 'probability requirement,' [p]laintiffs must allege facts that permit 'more than a sheer possibility that a defendant has acted unlawfully.'" *Turkmen v. Hasty*, 789 F.3d 218, 233 (2d Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).

Two principles guide a plausibility determination. *See Iqbal*, 556 U.S. at 678. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Turkmen*, 789 F.3d at 233 (quoting *Iqbal*, 556 U.S. at 678). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citing *Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir. 2007), *rev'd*, 556 U.S. 662 (2009)).

Where, as here, a complaint is filed *pro se*, it "must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). "This policy of liberally construing *pro se* submissions is driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (per curiam) (alteration in original) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). Consequently, when parties seek dismissal of *pro se* complaints, "courts 'apply[ ] a more flexible standard to evaluate their sufficiency than we would when reviewing a complaint submitted by counsel.'" *Thompson v. Pallito*, 949 F. Supp. 2d 558, 571 (D. Vt. 2013) (alteration in original) (quoting *Lerman v. Bd. of Elections in the City of N.Y.*, 232 F.3d 135, 140 (2d Cir. 2000)). Still, a complaint filed by a *pro se* plaintiff "must state a plausible claim for relief." *Hogan*, 738 F.3d at 515.

## II.     Section 1983

Under 42 U.S.C. § 1983, a claimant may bring suit "against '[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .'" *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alterations in original) (quoting 42 U.S.C. § 1983). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed

4

rights and to provide relief to victims if such deterrence fails." *Id.* (citing *Carey v. Piphus*, 435 U.S. 247, 254–57 (1978)).  "A § 1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges." *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Thompson*, 949 F. Supp. 2d at 569 (quoting *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993)).

## III.    Prison Litigation Reform Act

### A.    Exhaustion

Defendants argue that Cameron's claims are barred by the Prison Litigation Reform Act (PLRA) because she failed to exhaust her administrative remedies.  (Doc. 9 at 3.)

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Hernández v. Coffey*, 582 F.3d 303, 305 (2d Cir. 2009) (alterations in original) (quoting 42 U.S.C. § 1997e(a)).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012) (per curiam) (alteration in original) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)).

"Exhaustion is no longer left to the discretion of the district court, but is mandatory." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). In *Woodford*, the Supreme Court held that "the PLRA exhaustion requirement requires *proper* exhaustion." *Id.* at 93 (emphasis added). "That is, 'prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself.'" *Johnson*, 680 F.3d at 238 (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007)).

The failure to exhaust under the PLRA is an affirmative defense. *Jones*, 549 U.S. at 216. Therefore, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Williams v. Correction Officer Priatno*, Docket No. 14-4777, 2016 WL 3729383, at *3 (2d Cir. July 12, 2016) (quoting *Jones*, 549 U.S. at 216). Still, a court "may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement." *Id.*

Cameron affirms that there is a prison grievance procedure at SSCF. (Doc. 4 at 2.) Indeed, the DOC has promulgated a directive for the resolution of inmate grievances, which requires inmates to first file an informal grievance and then a formal grievance, followed by an appeal to the appropriate "Corrections Executive," with a final appeal to the DOC Commissioner. Vt. Dep't of Corrs., *Offender Grievance System for Field and Facilities* 1–15 (2007), http://www.doc.state.vt.us/about/policies/rpd/correctional-

6

services-301-550/301-335-facilities-general/320.01.pdf.[1]  In Cameron's Complaint, she

checked "Yes" in response to the question, "Did you present the facts relating to your

complaint in the state prisoner grievance procedure?"  (Doc. 4 at 2.)  However, she then

indicates in her Complaint that she only sent her grievance to the Commissioner "because

of fear of retaliation."  (*Id.*)  Therefore, Cameron failed to exhaust her remedies.

　　　　However, the Court must evaluate whether Cameron alleges any valid excuse for

her failure to exhaust administrative remedies.  In *Williams v. Correction Officer Priatno*,

the Second Circuit altered its analysis for failure-to-exhaust claims in light of the U.S.

Supreme Court's 2016 decision in *Ross v. Blake*, 136 S. Ct. 1850 (2016).  *Williams*, 2016

WL 3729383, at *3–5.  Under *Ross*, the proper inquiry is "whether administrative

remedies were actually available to the aggrieved inmate."  *Williams*, 2016 WL 3729383,

at *4 (citing *Ross*, 136 S. Ct. at 1858–59).  And "three circumstances" make such

remedies unavailable, even if those remedies are "officially on the books":

> First, an administrative remedy may be unavailable when "it operates as a
> simple dead end—with officers unable or consistently unwilling to provide
> any relief to aggrieved inmates." Second, "an administrative scheme might
> be so opaque that it becomes, practically speaking, incapable of use." In
> other words, "some mechanism exists to provide relief, but no ordinary
> prisoner can discern or navigate it." Third, an administrative remedy may
> be unavailable "when prison administrators thwart inmates from taking
> advantage of a grievance process through machination, misrepresentation,
> or intimidation."

*Williams*, 2016 WL 3729383, at *4 (quoting *Ross*, 136 S. Ct. at 1859, 1860).  The Court

in *Ross* also reiterated the "mandatory nature" of the PLRA's exhaustion requirement,

---

[1]  The Court may take judicial notice of DOC procedures.  *See Christman v. Skinner*, 468 F.2d
723, 726 (2d Cir. 1972) (taking judicial notice of state prison rules and regulations).

136 S. Ct. at 1857, and concluded by stating, "Courts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement."  *Ross*, 136 S. Ct. at 1862.

Here, beyond Cameron's single allegation regarding fear of retaliation, she does not allege any facts to indicate that the administrative remedies were "unavailable" to her. For instance, she does not allege that the grievance process operated as a "dead end" or that the DOC procedures were so "opaque" as to make them unavailable.  Cameron also does not allege a situation that fits within the third circumstance listed above; she claims to have been harassed by *inmates*, not officials.  *See Ross*, 136 S. Ct. at 1860 (describing third circumstance to include situations in which "*officials* misled or threatened individual inmates so as to prevent their use of otherwise proper procedures" (emphasis added)).  Because Cameron does not demonstrate that the DOC's grievance process was unavailable to her under *Ross*, I recommend that the Court DISMISS Cameron's claims as unexhausted.

### B.    Physical Injury

Next, Defendants argue that Cameron's claims for money damages are barred because, "to the extent emotional or mental injury could be inferred," she does not allege any corresponding physical injury or sexual act.  (Doc. 9 at 7.)

Under the PLRA, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)."  42 U.S.C.A. § 1997e(e).  In Cameron's

Complaint, she does not allege any type of injury, physical or mental.  Also, the act of

"[r]ipping open the s[h]ower curtain while [Cameron] was s[h]owering" (Doc. 4 at 2)

does not constitute a sexual act under 18 U.S.C. § 2246(2).  *See* § 2246(2) (defining

"sexual act").  Accordingly, to the extent that she seeks damages for mental or emotional

injuries, those claims are barred.  *See Toliver v. City of New York*, 530 F. App'x 90,

93 n.2 (2d Cir. 2013) (summary order) ("[U]nder 42 U.S.C. § 1997e(e), a prisoner may

not recover 'for mental or emotional injury suffered while in custody without a prior

showing of physical injury.'").

## IV.   Eleventh Amendment

Defendants argue that "to the extent [Cameron] seeks damages from Defendants in

their official capacities, her claims are barred by Eleventh Amendment sovereign

immunity."  (Doc. 9 at 9 (citation omitted).)

The Eleventh Amendment provides immunity to states and state agencies "from

suits brought by private parties in federal court."  *In re Charter Oak Assocs.*, 361 F.3d

760, 765 (2d Cir. 2004) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54

(1996)).  The doctrine of sovereign immunity under the Eleventh Amendment also

"protects state officials sued for damages in their official capacity."  *Minotti v. Lensink*,

798 F.2d 607, 609 (2d Cir. 1986) (citing *Kentucky v. Graham*, 473 U.S. 159 (1985)).

"[A] suit against a state official in his or her official capacity is not a suit against the

official but rather is a suit against the official's office.  As such, it is no different from a

suit against the State itself."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)

(citation omitted).

The Eleventh Amendment does not bar claims against state officials in their individual capacities. *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993). Additionally, there are two exceptions to Eleventh Amendment immunity: a state can waive its immunity to suit, or Congress can abrogate a state's immunity by statute. *Will*, 491 U.S. at 66.

Here, to the extent Cameron seeks money damages against Defendants Menard and Potanas in their official capacities, they are immune to suit. Also, neither exception to sovereign immunity applies. The State of Vermont has not waived its immunity, *see Thompson*, 949 F. Supp. 2d at 572 ("Vermont has not waived its sovereign immunity under § 1983." (citing Vt. Stat. Ann. tit 12, § 5601(g))), and Congress has not abrogated Vermont's immunity by statute. *See Muhammad v. Gold*, No. 1:05–CV–146, 2007 WL 3088133, at *2 (D. Vt. Oct. 23, 2007) ("There is no indication in 42 U.S.C. § 1983 that Congress intended to abrogate state sovereign immunity, and the Supreme Court has specifically held that Congress did not intend to override well-established immunities such as state sovereign immunity when it enacted § 1983."). Accordingly, I recommend that the Court DISMISS Cameron's claims for money damages against Defendants in their official capacities.

## V.    "Persons" Under § 1983

Next, Defendants argue that, in their official capacities, they are not "persons" under § 1983. (Doc. 9 at 9.) "[N]either a State nor its officials acting in their official capacities are 'persons' under [42 U.S.C.]§ 1983." *Huminski v. Corsones*, 396 F.3d 53, 70 (2d Cir. 2005) (alterations in original) (quoting *Will*, 491 U.S. at 71). Thus, "state

officials cannot be sued in their official capacities for retrospective relief under section 1983," *id.*, but they can be sued "in their official capacities for injunctive or other prospective relief," *id.* (citing *Will*, 491 U.S. at 71).  I recommend that Cameron's claims for retrospective relief against Defendants in their official capacities be DISMISSED on this ground.[2]

## VI.   Personal Involvement

As for Cameron's constitutional claims against Defendants in their individual capacities, Defendants argue that Cameron "fails to state how Defendants were personally involved with the alleged constitutional violations."  (Doc. 9 at 9–10.)

In the Second Circuit, it is well settled "'that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).  The Second Circuit explained:

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

---

[2]  When Defendants refer to "Defendant Pallito" in their Motion to Dismiss, I assume they intended to refer to "Defendant Menard."  (*See* Doc. 9 at 9, 11.)

*Colon*, 58 F.3d at 873.[3]  In addition, personal involvement "requires a showing of more than the linkage in the prison chain of command; the doctrine of respondeat superior does not apply."  *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (per curiam) (citing *Williams v. Vincent*, 508 F.2d 541, 546 (2d Cir. 1974)); *see also Colon*, 58 F.3d at 874 ("The bare fact that [Commissioner] Coughlin occupies a high position in the New York prison hierarchy is insufficient to sustain Colon's claim.").

Cameron does not allege any facts from which the Court can infer Defendant Menard's personal involvement in the alleged violations.  Although Cameron states that she sent a grievance to the Commissioner, "[c]ourts in this circuit have said that the receipt of letters or grievances, by itself, does not amount to personal involvement." *Mateo v. Fischer*, 682 F. Supp. 2d 423, 430 (S.D.N.Y. 2010).  On the other hand, "[p]ersonal involvement will be found . . . where a supervisory official receives and acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint." *Johnson v. Wright*, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002).  But Cameron does not allege facts suggesting that the Commissioner acted on or otherwise responded to the grievance.

Cameron also fails to demonstrate Defendant Potanas's personal involvement in the alleged violations.  In fact, the Complaint does not set forth any allegations

---

[3]  In *Grullon v. City of New Haven*, the Second Circuit recognized that "the Supreme Court's decision in *Ashcroft v. Iqbal* . . . may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations."  *Grullon*, 720 F.3d 133, 139 (2d Cir. 2013); *see also Raspardo v. Carlone*, 770 F. 3d 97, 117 (2d Cir. 2014) (declining to decide "contours of the supervisory liability test . . . after *Iqbal*").  Still, the Second Circuit has not specifically overruled *Colon*, and this Court continues to treat it as good law.  *See, e.g.*, *Jones v. Pallito*, No. 2:14–cv–199, 2015 WL 2376347, at *5 n.9 (D. Vt. May 18, 2015).

concerning Potanas, and the Court cannot infer liability based on Potanas's position as Superintendent at SSCF.  *See Graham v. Poole*, 476 F. Supp. 2d 257, 260 (W.D.N.Y. 2007) ("[M]ere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." (alteration in original) (quoting *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003))).

Lastly, Cameron alleges that Defendants have denied her the opportunity to participate in the work camp program because she identifies as a female (Doc. 4 at 4), and have "allowed other [i]nmates to harass [Cameron] without consequences" (*id.* at 3). These conclusory statements also are not sufficient to demonstrate Defendants' personal involvement under *Colon*.  *See Parris v. N.Y. State Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 365 (S.D.N.Y. 2013) ("The Complaint's conclusory statements are insufficient to demonstrate the personal involvement of any of the supervisory defendants named in this case."); *LM Bus. Assocs., Inc. v. Ross*, No. 04–CV–6142 CJS, 2004 WL 2609182, at *4 (W.D.N.Y. Nov. 17, 2004) ("[D]efendants are correct that conclusory allegations alone are insufficient to establish personal involvement under § 1983.").  Accordingly, Cameron's claims for damages against Defendants in their individual capacities should be DISMISSED based on Defendants' lack of personal involvement.

## VII.   Eighth Amendment

Assuming *arguendo* that Cameron sufficiently alleged Defendants' personal involvement, I proceed with an analysis of the constitutional claims against Defendants.

Defendants construe two of Cameron's allegations as forming the basis of an Eighth Amendment claim: "Defendants' response to the shower curtain incident," and the

13

requirement that Cameron "shower alone." (Doc. 9 at 12.) To these I add the more general assertion that Defendants have "allowed other [i]nmates to harass [Cameron] without consequences" (Doc. 4 at 3), and I now consider whether these allegations rise to the level of cruel and unusual punishment under the Eighth Amendment.

### A.      Condition of Confinement—Showering Alone

"The Eighth Amendment prohibits the infliction of 'cruel and unusual punishments.'" *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (quoting U.S. Const. amend. VIII). Also, "it is now settled that 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (quoting *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). To establish an Eighth Amendment violation, "a prisoner may prevail only where he proves both an objective element—that the prison officials' transgression was 'sufficiently serious'—and a subjective element—that the officials acted, or omitted to act, with a 'sufficiently culpable state of mind,' *i.e.,* with 'deliberate indifference to inmate health or safety.'" *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (quoting *Farmer*, 511 U.S. at 834).

Under the first prong of the test for Eighth Amendment violations, prisons need not be "comfortable," *id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)), but prisoners may not be deprived "of their 'basic human needs—*e.g.,* food, clothing, shelter, medical care, and reasonable safety,'" *id.* (quoting *Helling*, 509 U.S. at 32). "To prevail on a claim based on the conditions of his confinement, a prisoner must show 'extreme deprivations,' '[b]ecause routine discomfort is "part of the penalty that criminal offenders

14

pay for their offenses against society.""" *Sims v. Artuz*, 230 F.3d 14, 21 (2d Cir. 2000)

(alteration in original) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)).  "[T]he

conditions themselves must be evaluated in light of contemporary standards of decency."

*Walker*, 717 F.3d at 125 (quoting *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012)).

Construing Cameron's allegations liberally, Cameron's only condition-related claim

appears to be based on her assertion that she is required to shower alone while "all

inmates are locked in their cells."  (*See* Doc. 4 at 3.)  I do not find that this condition

amounts to an extreme deprivation.  The condition is "restrictive," and it may be

uncomfortable or temporarily isolating, but it does not deprive Cameron of any basic

human need.  *See Rhodes*, 452 U.S. at 347 (permitting conditions that are "restrictive and

even harsh").

  As for the subjective analysis, Cameron's Complaint fails to show that Defendants

acted with the requisite deliberate indifference.  The Supreme Court has defined

deliberate indifference to mean that "the official knows of and disregards an excessive

risk to inmate health or safety; the official must both be aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists, and he must also

draw the inference."  *Farmer*, 511 U.S. at 837.  Although Cameron states that Defendants

were "on [n]otice" that she identifies as female, she does not allege that Defendants knew

of a substantial risk of harm to Cameron and disregarded the risk.  (*See* Doc. 4 at 3.)  The

condition of showering alone presents no risk of serious harm to Cameron, and it differs

starkly from conditions other courts have found to give rise to plausible Eighth

Amendment claims.  *See, e.g.*, *Walker*, 717 F.3d at 126 (describing conditions including

"inadequate space and ventilation" in inmate's cell, "stifling heat . . . and freezing cold," and "unsanitary conditions, including urine and feces . . . on the floor").  In fact, the Complaint suggests that the condition of showering alone may have been imposed to *protect* Cameron from the alleged inmate harassment, an allegation which is discussed below.  Therefore, any Eighth Amendment claim based on an unconstitutional condition of confinement fails.

### B.   Failure to Protect from Harassment

The Complaint presents two other allegations that implicate the Eighth Amendment: Defendants' failure, in response to the shower incident, to penalize the inmate who ripped open the curtain, and Defendants' failure to protect Cameron from harassment.  Neither allegation gives rise to a plausible Eighth Amendment claim.  "The Eighth Amendment imposes a duty on prison officials 'to take reasonable measures to guarantee the safety of inmates in their custody.'"  *Barnes v. Henderson*, 490 F. Supp. 2d 313, 318 (W.D.N.Y. 2007) (quoting *Hayes v. N.Y.C. Dep't. of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996)).  However, "an inmate's constitutional right to protection is only violated where the failure is 'sufficiently serious' and the official has acted with 'deliberate indifference.'"  *Jones v. Nassau Cty. Corr. Inst.*, Nos. 14–CV–1217 (JFB)(GRB), 14–CV–1562 (JFB)(ARL), 2014 WL 1277908, at *5 (E.D.N.Y. Mar. 26, 2014) (quoting *Farmer*, 511 U.S. at 834); *see also Murray v. Goord*, 668 F. Supp. 2d 344, 357 (N.D.N.Y. 2009).

While "[t]he law is clear that 'prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners[,]'" *Rigano v. County of Sullivan*, 486 F.

Supp. 2d 244, 253 (S.D.N.Y. 2007) (alterations in original) (quoting *Farmer*, 511 U.S. at

828, 833), "not 'every injury suffered by one prisoner at the hands of another . . .

translates into constitutional liability for prison officials responsible for the victim's

safety,'" *id.* at 255–56 (quoting *Farmer*, 511 U.S. at 834).  "For example, 'an inmate's

claim that prison officials failed, as a result of their deliberate indifference, to protect him

from the *violent actions* of other inmates may state a viable § 1983 cause of action.'"

*Randle v. Alexander*, 960 F. Supp. 2d 457, 471 (S.D.N.Y. 2013) (emphasis added)

(quoting *Hendricks v. Coughlin*, 942 F.2d 109, 113 (2d Cir. 1991)).

      Here, Cameron has not alleged a "sufficiently serious" failure on the part of

Defendants, as she has not alleged any injury (mental or physical) or any act of violence

by other inmates.  *Cf. Warren v. Goord*, 476 F. Supp. 2d 407, 410 (S.D.N.Y. 2007)

(finding first prong of Eighth Amendment inquiry met where inmate was violently

attacked, especially "in light of plaintiff's allegations of a recent murder and other attacks

on inmates").  The act of ripping open a shower curtain is not a violent attack, and,

moreover, it did not lead to "even a *de minimis* injury." *See Neason v. Bienko*, No. 09–

CV–6327 (MAT), 2012 WL 4760891, at *8 (W.D.N.Y. Oct. 5, 2012) ("With regard to

the incident of being spit upon by another inmate, he has not alleged even a *de minimis*

injury.").  Absent injury or other damage, Cameron's allegations of general harassment

by inmates and a single incident in the shower do not satisfy the first prong of the test for

Eighth Amendment claims.  *See Jones*, 2014 WL 1277908, at *5 ("It is well[ ]established

that verbal abuse or name calling alone is not actionable under Section 1983." (citing

*Webster v. Fischer*, 694 F. Supp. 2d 163, 187 (N.D.N.Y. 2010))); *cf. Greene v. Mazzuca*,

485 F. Supp. 2d 447, 451 (S.D.N.Y. 2007) (stating in case involving harassment by prison officials that "[p]risoners have no constitutional right to be free from harassment. Harassment may be so drastic as to violate the Eighth Amendment's right to be free from cruel and usual punishment, but only in the harshest of circumstances." (citations omitted)); *Harris v. Keane*, 962 F. Supp. 397, 406 (S.D.N.Y. 1997) (finding "[a]llegations of threats, verbal harassment[,] or profanity, without any injury or damage, do not state a claim under § 1983" where prison officials allegedly "verbally harassed" inmate) (citing *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986))).

With regard to the deliberate-indifference prong of the analysis, Cameron has not alleged a culpable state of mind on the part of Defendants. *See Farmer*, 511 U.S. at 834 ("[A] prison official must have a 'sufficiently culpable state of mind.' (citation omitted)). Cameron asserts that Defendants knew she was a transgender individual and "allowed" inmates to harass her (Doc. 4 at 3), but these allegations do not suggest that Defendants could have inferred "that a substantial risk of serious harm exist[ed]" to Cameron, or that Defendants actually drew that inference. *Farmer*, 511 U.S. at 837. And as noted above, the Complaint suggests that Defendants did *not* fail to act in response to the purported harassment. To the contrary, they apparently imposed the condition that Cameron shower alone, which could be interpreted as a precautionary measure to protect Cameron from the purported harassment. On the face of the Complaint, Cameron has not plausibly alleged Defendants' deliberate indifference.

Accordingly, I recommend that the Court GRANT Defendants' Motion insofar as it seeks dismissal of Cameron's Eighth Amendment claims.

## VIII.   Equal Protection

Lastly, Defendants argue that Cameron's allegations fail to state a claim under the Equal Protection Clause of the Fourteenth Amendment.  (Doc. 9 at 14–15.)

"The Equal Protection Clause requires that the government treat all similarly situated people alike." *Gentile v. Nulty*, 769 F. Supp. 2d 573, 577–78 (S.D.N.Y. 2011) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).  It also "protects prisoners from invidious discrimination." *Siminausky v. Starkowski*, CASE NO. 3:15-cv-159 (VLB), 2016 WL 236208, at *8 (D. Conn. Jan. 20, 2016).  Cameron appears to be raising a "selective treatment claim[]," which "arise[s] when plaintiffs claim that they were treated differently based on impermissible considerations, such as membership in a protected class . . . ." *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 693 (S.D.N.Y. 2011).  The class at issue here consists of transgender individuals who identify as female.  (*See* Doc. 4 at 3.)

Defendants analyze Cameron's claim under the "intermediate scrutiny" standard. *See Clark v.* Jeter, 486 U.S. 456, 461 (1988) ("[W]e apply different levels of scrutiny to different types of classifications. . . .  Between [the] extremes of rational basis review and strict scrutiny lies a level of intermediate scrutiny, which generally has been applied to discriminatory classifications based on sex or illegitimacy.").  In *Adkins v. City of N.Y.*, 143 F. Supp. 3d 134, 138 (S.D.N.Y. 2015), a case cited by Defendants, the district court applied intermediate scrutiny to an equal protection claim brought by a transgender detainee.  *Id.* at 139.  The court found that transgender individuals are a "quasi-suspect

class" based on multiple factors, including the "history of persecution and discrimination" against them. *Id.* at 139; *see also id.* at 138–40. Under the intermediate scrutiny standard, the court assessed whether the plaintiff's complaint alleged that his differential treatment was "substantially related to an important government interest." *Id.* at 140.

Here, Cameron states that "Defendants have treated [her] differently th[a]n other inmates at other times because [she] identifies as a female" (Doc. 4 at 3), and she has been denied the chance to participate in work camp because of her gender identity (*id.* at 4). However, she provides no other factual allegations to demonstrate an equal protection violation, and "[c]onclusory allegations of selective treatment are insufficient to state an equal protection claim." *Abdur-Raheem v. Wenderlich*, No. 07–CV–6247, 2012 WL 5185605, at *1 (W.D.N.Y. Sept. 19, 2012) (quoting *Bishop v. Best Buy, Co. Inc.*, No. 08 Civ. 8427(LBS), 2010 WL 4159566, at *11 (S.D.N.Y. Oct. 13, 2010)), *report and recommendation adopted*, No. 07–CV–6247L, 2012 WL 5185191 (W.D.N.Y. Oct. 18, 2012); *see also Mohamed v. Powers*, 9:14-CV-1389 (TJM/TWD), 2015 WL 8492472, at *5 (N.D.N.Y. Dec. 10, 2015) ("Vague and conclusory allegations[] are insufficient to plausibly suggest an equal protection violation."). Absent specifics, the Court cannot infer a plausible equal protection claim and need not decide whether intermediate scrutiny is the appropriate standard to apply here.

Accordingly, I recommend that the Court GRANT Defendants' Motion insofar as it seeks dismissal of Cameron's equal protection claim. [4]

## IX.   Leave to Amend

"A *pro se* complaint 'should not [be] dismiss[ed] without [the court] granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'"  *Grullon*, 720 F.3d at 139 (first and second alterations in original) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)). "Leave to amend may properly be denied if the amendment would be 'futil[e],'" *id.* at 140 (alteration in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)), or if the plaintiff has "'repeated[ly] fail[ed] to cure deficiencies'" through prior amendments, *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman*, 371 U.S. at 182).

Here, Cameron did not file a response to Defendants' Motion.  Still, as a *pro se* litigant, she should be given the opportunity to amend her Complaint.  Any amended filing should be titled "Amended Complaint" and should contain all claims against all parties, as it will supersede the original Complaint in all respects.  The Court should require that an Amended Complaint, if any, be filed within 30 days of its ruling on this

---

[4] Cameron's claims fail for all of the reasons stated above.  In addition, Cameron's request for good-time credit as part of her request for relief (Doc. 4 at 3) is meritless because that relief is not properly sought under § 1983.  Rather, a petition for writ of habeas corpus is the appropriate vehicle to seek relief in the form of good-time credit.  *See Poventud v. City of New York*, 750 F.3d 121, 128 (2d Cir. 2014) (citing *Preiser v. Rodriguez*, 411 U.S. 475 (1973)); *Davis v. Burlington Cnty. Dep't of Corr.*, Civ. No. 16-1551 (NLH), 2016 WL 4118913, at *5 (D.N.J. Aug. 1, 2016) ("A habeas corpus petition is the proper mechanism for a prisoner to challenge the 'fact or duration' of his confinement, including challenges to prison disciplinary proceedings that affect the length of confinement, such as deprivation of good time credits." (citations omitted)).

Report and Recommendation.  Cameron's failure to amend her complaint should result in dismissal of this case with prejudice.

## Conclusion

For the reasons stated above, I recommend that the Court GRANT Defendants' Motion to Dismiss (Doc. 9), and I further recommend that, if this Report and Recommendation is adopted by the Court, Cameron be allowed 30 days to file an amended complaint.  Failure to file an amended complaint within that time frame should result in the dismissal of Cameron's claims with prejudice.

Dated at Burlington, in the District of Vermont, this 24th of August, 2016.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision."  *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).